IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RENAY WICKS WEAVER** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | CV 00-C-1799-S |
| **JEFFERSON COUNTY RACING** ) | |
| **ASSOCIATION, INC., and JOHN** ) | |
| **PARKER,** ) | |
| ) | |
| Defendants. ) | |

FILED
02 JUL 31 PM 3:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 31 2002

### MEMORANDUM OPINION ON DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Defendant Jefferson County Racing Association has moved for Summary Judgment on the sexual harassment and retaliation claims of Plaintiff Renay Wicks Weaver. For the reasons which follow, the Summary Judgment motion is due to be granted.

### I. FACTS

Plaintiff Renay Wicks Weaver was hired by Jefferson County Racing Association (JCRA) on April 9, 1998, as a Wait-Staff person. On the date of her hire, Plaintiff was provided with a copy of JCRA's Employee Handbook. She was also shown a sexual harassment video as a part of her orientation. She acknowledged receiving the Handbook, and she accepted responsibility for familiarizing herself with its contents.

JCRA's Harassment and Sexual Harassment Policy Statement adequately defines and explains sexual harassment, and it provides a reasonable set of reporting guidelines. An



employee who feels that he/she has been sexually harassed may report the conduct to the Department manager, the Chaplain, the General Manager, or the Director of Human Resources.

As of June 14, 1998, Plaintiff had been assigned to the position of Maintenance I in JCRA's Maintenance Department ("MD").

Roy Lee Hill was the Director of Maintenance throughout Plaintiff's employment. John C. Parker was the Maintenance Superintendent from the time that Plaintiff entered the MD until his termination on May 24, 1999. He was Plaintiff's immediate supervisor.

On November 4, 1998, Plaintiff reported to Linda Butler, JCRA's Director of Human Resources, that she had been sexually assaulted by an employee of FMC Kennels, an independent contractor on JCRA's premises. Specifically, Plaintiff claimed that the FMC Kennels' employee physically attempted to prevent her from leaving the kennel area. Following an investigation of the complaint, MD personnel were instructed that Plaintiff should be accompanied by other MD employees anytime she went to the kennel area.

Plaintiff's complaints against JCRA primarily revolve around Parker. In support of her claim of sexual harassment, Plaintiff testified to seven incidents or comments or situations which are the basis for her claim:

- Within the first four weeks of her assignment to the MD, Parker said to Plaintiff, "I will make or break you in six weeks."

- Parker had mens' magazines and photographic videotapes around the shop, as well as in his office.

- Parker once said to MD employee Darren James: "We have a bet going. We would like to know if Renay has given you a blow job yet."

- Parker asked Plaintiff if her "private parts" looked like the individuals depicted in the pornographic magazines in his office.

2

- On one occasion, Parker placed a dollar bill in Plaintiff's back pocket while she was standing on a ladder at work.

- Parker made comments about the physical attributes of the waitresses at a restaurant when Plaintiff and Parker were at lunch.

- After overhearing a conversation between Plaintiff and her co-worker Becky Seals, Parker asked Plaintiff and Seals "what is it about Jagermeister that makes women horny."

Parker generally subjected Plaintiff to sexist remarks and other female workers. While Plaintiff complained to Parker of these incidents, she did not complain to Hill.

Plaintiff had previously worked in the "adult entertainment business" as a dancer. On one occasion, Parker and Plaintiff were engaged in a conversation, and Parker asked her about a certain dancer he had seen in Fultondale. Parker asked Plaintiff if she knew the dancer. Plaintiff responded that she had a photograph album and the dancer's picture might be in it. Plaintiff agreed to bring the album into the workplace. She brought the album to work roughly two weeks after she agreed to do so.

The album contained numerous pictures of males and females in various stages of undress, including pictures of women without tops as well as two naked men with no clothes, but groin areas were covered. Several of the photos depicted Plaintiff in sexually suggestive clothing and poses. In at least one photo, a bra-less Plaintiff is holding her breasts. In her deposition, Plaintiff testified that she now feels that some of the album's photos are objectionable.

Plaintiff's album remained in the workplace for three days. Plaintiff testified that "[i]t was in the carpenter shop, so it was open. ...I'm sure that other employees could see it."

In the workplace, Plaintiff reviewed the photos in the album with her co-workers and

3

made various comments.

Plaintiff was on a methadone treatment program during the entirety of her employment with JCRA. By her own admission, she tested positive for cocaine twice while working for JCRA.

On February 4, 1999, Plaintiff first reported Parker's activities and comments to JCRA, JCRA duly investigated the complaint. It concluded that more likely than not, Parker had engaged in conduct which could constitute sexual harassment. In response, it gave Parker a warning and suspended him from work for a week. After Parker returned to work, he engaged in retaliatory conduct towards Plaintiff. On May 24, 1999, JCRA it terminated Parker's employment, based on his retaliatory conduct towards Plaintiff and his earlier harassment of her.

According to Plaintiff, she was never demoted, and she received pay raises after making her complaint against Parker.

Plaintiff subsequently resigned her position with JCRA.

## II. Applicable Law & Analysis

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). When passing on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.

The Eleventh Circuit recently clarified the summary judgment standard in employment discrimination cases stating that "the summary judgment rule applies in job discrimination cases just as in other cases." Chapman v. AL Transport, 229 F.3d 1012, 1026 (11th Cir. 2000). This

4

decision abrogated the previous view that summary judgment was not a proper vehicle for employment discrimination claims which often turn on an employer's motivation and intent. Id. at 1025 (citing Delgado v. Lockheed-Georgia Co., 815 F.2d 641, 644 (11th Cir 1987); accord Batey v. Stone, 24 F.3d 1330, 1336 (11th Cir. 1994)).

To establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that she belongs to a protected group; (2) that the employee has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

The fourth element of the paradigm, establishing that the harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subject and objective component. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)). The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. Id. The environment must be one that "a reasonable person would find hostile or abusive." Id. Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Id. (quoting Harris, 510 U.S. at 23).

An employer's liability for supervisory harassment turns on whether the harassment

5

culminates in a "tangible employment action" such as a discharge or demotion, or actions sufficient to constructively alter an employee's working conditions. <u>Burlington Indust. Inc. v. Ellerth</u>, 524 U.S. 742, 761-63 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998). Where the supervisory harassment results in a tangible employment action, the employer is strictly liable. But when no tangible employment action is involved, the employer may assert an affirmative defense to the harassment charge. The affirmative defense consists of two elements: (1) that the employer acted reasonably to prevent and promptly correct the sexual harassment; and (2) that the employee unreasonably failed to utilize the preventive/corrective mechanisms provided by the employer. <u>Id</u>. at 745.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that: (1) she engaged in conduct protected by Title VII - e.g., making a complaint of sexual harassment; (2) she suffered an adverse employment action after engaging in the protected conduct; and (3) a causal connection between the protected conduct and the adverse action. See <u>Berman v. Orkin Terminating Co., Inc.</u>, 160 F.3d 697, 701 (11th Cir.1998). An "adverse employment action" is an ultimate employment decision which adversely affects one's status as an employee - such as a discharge, denial of promotion, demotion. See <u>Gupta v. Florida Board of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000); <u>Bass v. Bd. of County Comm'r</u>, 256 F.3d 1095, 1117 (11th Cir.2001).

### III. Analysis

Taking the easiest issue first, Plaintiff falls far short of the mark on her claim of retaliation. There is just no evidence that Plaintiff has suffered an adverse employment action, as confirmed by Plaintiff' deposition testimony. Defendant therefore is entitled to summary

judgment on the retaliation claim.

On the sexual harassment claim, it is questionable that all of the sexual conduct of which Plaintiff complains was "unwelcomed" by her. Some of it clearly was not. And given the base sexuality depicted in the photograph album which Plaintiff introduced into the workplace, it is doubtful that she can recover for an atmosphere polluted in part by her own actions. The photos in the album which Plaintiff made available to her co-workers, Plaintiff's conversations in the workplace with Parker and others, together with her background as a dancer in sexually explicit places of entertainment, all raise serious concerns of whether Plaintiff subjectively perceived the sexually charged atmosphere to be so severe as to alter the terms and conditions of her employment.

However, on a motion for summary judgment, the Court does not act as a factfinder. Whether a reasonable jury could find that Plaintiff has carried her burden of proof of sexual harassment is an issue which the Court need not address, as Defendant's affirmative defense carries the day.

At all material times, Plaintiff was aware of Defendant's Sexual Harassment policy. She chose not to utilize it during the vast majority of the time she was being harassed by Parker. When she finally decided to test it, it worked. Parker was promptly suspended, and ultimately fired. There is nothing in the record to suggest that the policy would not have worked had she resorted to and relied on it as soon as she became aware of Parker's harassment.

Defendant is entitled to summary judgment on its affirmative defense.

There is no factual basis for Plaintiff's state law claims (invasion of privacy, outrage) against Defendant JCRA.

7

By separate order, Summary Judgment will be granted in favor of Defendant JCRA.

Done this **31st** day of July, 2002.

                                                                                                      Chief United States District Judge
                                                                                                                 U.W. Clemon